HEIRS OF FRANCISCO M. FRANCESCHI, Appellants, *v.* REGISTRAR OF PROPERTY OF PONCE, Respondent.

No. 768. Submitted May 27, 1929.—Decided June 18, 1929.

*López de Tord & Zayas Pizarro* for the appellants.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

It results from the record in this appeal that Pedro Pérez Santiago mortgaged to the Federal Land Bank of Baltimore five rural properties belonging to him and later by a deed executed on November 16, 1928, created a second mortgage on the same properties in favor of the bearer or bearers of five notes or obligations signed by Pérez Santiago. This mortgage was recorded in the registry of property of Ponce.

Suit was brought in the District Court of Ponce by the heirs of Francisco M. Franceschi against Pedro Pérez Santiago to recover on the notes. In that suit the plaintiffs moved to secure the effectiveness of the judgment and the marshal attached different properties, among them the five mortgage notes referred to, the writ having been issued as notice to

the defendant. An order was presented in the registry for recording the attachment and it was noted by the registrar. As regards the mortgage to secure the notes payable to bearer he explained that the annotation was made without prejudice to third persons.

The present appeal has been taken from that decision for a modification of the annotation and reversal as regards its having been made without prejudice to third persons with respect to the notes.

Both parties have presented briefs.

The appellants contend that the inclusion in the annotation of the words "without prejudice to third persons" renders it equivalent to a denial of record; that on the date when the annotation was made there were no third persons because it is presumed that the notes are in the possession of the debtor who executed the mortgage and signed the notes, and that the registrar did not apply articles 142 and 143 of the Mortgage Law by virtue of which for the existence of a third holder of the notes their conveyance and delivery must appear recorded in the registry by means of a marginal note.

The registrar maintains that this is not a proper case for an administrative appeal because it does not refer to qualification, denial, or assignment of curable defect; that in the present case there has been no notification of the record because the interested party wrote and signed the notification without the intervention of the registrar; that on the same day when the second mortgage deed was executed a copy of it and the five notes were presented in the registry of property for record and the notes were recorded in favor of their holders; that on the 6th of last April and by means of a deed executed on the 5th of the same month before notary Zapater it was stated that Mario Mercado was the holder of notes Nos. 2, 3 and 4, and Heraclio Cintrón of notes Nos. 1 and 5; that that deed was noted in the registry; that the writ of attachment in the present case was issued on March 27, 1929, and was executed by the marshal and presented in the registry

on the same day, record being made of the notes without prejudice to third persons; that on May 8, 1929, the attorney for the plaintiffs withdrew the writ of attachment and issued a notification without the assent or signature of the registrar. He discusses the propriety of the appeal, citing in opposition thereto the jurisprudence of Porto Rico and of Spain, and argues the grounds of the appeal.

The theory of the appellants, if we understand it well, is that a mortgage to secure obligations transferable by indorsement and obligations payable to bearer is not a real mortgage until the moment when the secured obligations are transferred by indorsement or by delivery and then only has the loan been consummated; that so considered, that mortgage has the same condition as one which secures a future obligation, or subject to a suspensive condition, and comes within the purview of articles 142 and 143 of the Mortgage Law which provide that in such cases it shall be effective against third persons from its record if the obligation be contracted or the condition fulfilled, and in these cases the circumstance must be recorded by means of a marginal note.

The appellants cite Aragones, Morell and Galindo and Escosura. But we must say that in some of those citations they have failed to transcribe a very important matter which we shall include in this opinion.

We may agree with the doctrine of Aragones that a mortgage to secure current accounts may be one which refers to future obligations, inasmuch as a current account, while it is open, is nothing more than the germ of an obligation which will be determined and fixed in a more or less remote future. But we do not agree that mortgages which secure obligations transferable by indorsement, or payable to bearer, have that same character; that in these the obligation exists from a beginning, the amount is determined and only the *special name* of the creditor is variable, but the generic name of such creditor, indorser or bearer is fixed. The mortgage is born at the time of the execution of the deed and it is not neces-

sary to wait for the name of the creditor to be specified or singularized, since generically it is determined.

The same answer may be given to the theory of Galindo and Escosura as far as it may be considered applicable to this class of mortgages.

As to Morell, we should say that there has been failure to include in the quotation a paragraph reading as follows:

"Does this mean, as likewise maintained by some writers, that during the interval from the record of the mortgage until the securities are put in circulation and acquired by third persons, there exists a real mortgage in favor of the owner, since he is alive and there are no other creditors? Not at all. The law does not require a note to show the circulation, because it would not be possible, but it would be more essential to show the existence of third holders or purchasers of all the obligations issued, and of course it considers as being effective the recorded mortgage when the facts in question take place. It excuses a requisite, but nothing else, in view of the nature of the secured obligation, just as it overlooks the acceptance, and any deed or record in the transfer of titles. In our statutes the debtor and the creditor can not be one and the same person and the owner of a property can not mortgage it in his favor. The rights and obligations being merged in a single entity, the mortgage may exist in the record, but nobody can make it effective until, through delivery of a few, many or all of the titles, there are third persons and coexisting with them demandable credits and a creditor. While the titles in question continue in possession of the aspirant to be his creditor, as he owes nothing, nothing can be required of him or by him, and the mortgage can not benefit anybody." 4 Morell, Mortgage Legislation, 260.

We copy this paragraph because of its reference in the first part to denial of the existence of the mortgage in favor of the owner and its affirmance of the fact that the law does not require any marginal note showing the circulation, on which points we agree. There seems to be some contradiction in the other parts, but we think that the author had in mind obligations issued by some industrial companies, in which case it might happen that the company reserved the obligations in order to place them on the market later, and there is perhaps some confusion between the existence of the

mortgage and its exigibility. The mortgage lien became effective when the mortgage was created and recorded and from that moment there existed a known and specified debtor; a generic creditor or creditors having the character, under whatever name, of indorsers or holders; a definite obligation, and a security of the same class.

The Spanish Mortgage Law of 1861 did not admit the mortgage for obligations transferable by indorsement or payable to bearer. A declaration in that sense by the legislators is found in the statement of reasons for that law. To quote here all of the paragraphs dealing with this matter would render the citation too long. It is sufficient to transcribe the following:

"Leaving aside the system of indorsement the Committee had only to apply for the disposal or assignment of mortgage credits the same rules governing the whole bill; that the assignment of a mortgage credit be executed in a public deed to avoid any fraud that might arise from private instruments . . ."

But in the amendment of 1869 a change of system had already become necessary. A mortgage to secure obligations payable to bearer and those transferable by indorsement had practically become a necessity and the law had to meet that requirement. In the statement submitted to the Cortes we find the following paragraph:

"XV. Also for the purpose of facilitating the land credit it is proposed in the new act to amend section 153 of the Act of 1861, wherein it is established that a mortgage credit can only be disposed of or assigned by public deed. Although the grounds for the enactment of that section were very weighty, an amendment has now become necessary, either because some credit institutions have availed themselves of the mortgage credit to issue obligations transferable by indorsement, or because authority has been granted to railroad concessionaires to issue certificates to bearer secured by mortgage, or, lastly, because some big property holders have begun to avail themselves of the land credit by issuing mortgage obligations transferable by indorsement and redeemable at long terms. If for the purpose of the circulation of the aforesaid obligations the public deed were neces-

sary, just as it is necessary for constituting a mortgage, the mortgage law would be of no use in some cases because it would not be feasible to execute such document and in others because the parties concerned would refuse to do so by reason of the expenses to be incurred thereby. For the purpose of the mortgage law, of the land credit, what is essential is that information in regard to the incumbered properties and the amount of the liens should be found in the registry, without the absolute necessity of designating the persons entitled to demand the performance of the secured obligation, as that should be shown in the courts if the opportunity arises. But the amendment of the aforesaid section requires the enactment of some measures intended in the new act for the purpose of preventing the cancellation to the prejudice of the parties having an interest in them, since they are not known in the registry." 5 Alcubilla, p. 652.

An idea may be had from the legislation of the development of the practice of securing by mortgage obligations traditionally transferable by indorsement. Thus we find the Royal Decree of July 24, 1875, referring to the Mortgage Bank of Spain and the Code of Commerce of 1885 which gave to territorial credit companies authority to omit mortgage obligations and certificates (sections 199, 201, 206, 207 and 208 of the said Code).

The Spanish Mortgage Law, as amended in 1869, contains the following addition to its article 153:

"In a mortgage created to guarantee negotiable obligations or deeds to bearer, when the mortgage interest is alienated or assigned, it shall be understood that the latter is transferred together with the obligation or with the deed, it being unnecessary to give notice thereof to the debtor, or to record the transfer in the registry."

The Mortgage Law for Cuba, Porto Rico and the Philippine Islands contains in article 161 a paragraph identical to the one transcribed. That paragraph is essentially article 153 of our Mortgage Law.

The system of mortgage security in regard to notes to bearer and obligations transferable by indorsement being frankly accepted, the consequences of the same nature of those thus secured are reflected in the registry. To require

the record or entry of the conveyances of such obligations would operate as a nullification of the flexibility of credit. And that evil is avoided by insertion in the article of the following:

" . . . . without the necessity of the debtor being advised thereof *or the transfer being recorded in the registry.*" (Italics ours.)

Act No. 33 of 1912 of Porto Rico reproduces the same provision.

Therefore, this is not a case of obligations containing a condition and to which the provisions of law cited by the appellants are applicable. There is a third person, the bearer, and the registrar acted correctly in recording the document as he did.

The same point is involved in the decision of this court in *Godreau* v. *Registrar,* 37 P.R.R. 614, and the doctrine herein laid down coincides with that in the said case.

The registrar raises the question that the appeal did not lie because no refusal to record or curable defect was involved. We can not agree with the extremely technical construction put on the law by the registrar. If there is involved in the decision a practical denial of record, an appeal therefrom lies. The law meant to create a remedy and not an exclusion.

The decision appealed from must be affirmed.